1

2

3

4

5

6

7

8                           UNITED STATES DISTRICT COURT

9                       FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   KEENAN WILKINS,                          No.  2:20-cv-01622 DJC SCR P

12              Plaintiff,

13        v.                                  FINDINGS & RECOMMENDATIONS

14   S. HESLOP, et al.,

15              Defendants.

16

17        Plaintiff is a former state prisoner proceeding pro se in this civil rights action under 42

18   U.S.C. § 1983.[1]  Before the court is defendants' motion for partial summary judgment.  (ECF No.

19   51.)  For the reasons described below, the undersigned recommends that defendants' motion be

20   granted except as to their request for summary adjudication of punitive damages.

21                                    **BACKGROUND**

22        **I.      Second Amended Complaint**

23        The case proceeds on plaintiff's second amended complaint ("SAC") filed on November

24   7, 2022.  (ECF No. 20.)  At all relevant times, plaintiff was an inmate at California Health Care

25   Facility ("CHCF").  (Id. at 1.)  Plaintiff alleges that defendant Heslop used excessive force on

26   January 17, 2019, after removing plaintiff from his mental health group therapy session, and then

27

28   [1]  Plaintiff was released from custody in January 2025.  (See ECF No. 83 at 2.)

                                            1

1  issued a retaliatory rules violation report ("RVR").  (Id. at 3, 7.)  On a class-of-one theory,

2  plaintiff alleges that defendants Velasquez and Sawma violated his equal protection rights at the

3  subsequent RVR hearing on January 25, 2019.  (Id.)

4        On April 10, 2023, Judge Barnes, the previously assigned magistrate judge, found plaintiff

5  stated the following cognizable claims: (1) excessive force in violation of the Eighth Amendment

6  against defendant Heslop; (2) retaliation in violation of the First Amendment against defendant

7  Heslop; (3) "class of one" discrimination in violation of the Equal Protection Clause of the

8  Fourteenth Amendment against defendants Sawma and Velasquez; (4) state law assault against

9  defendant Heslop; (5) state law battery against defendant Heslop; and (6) a Bane Act violation

10  against defendant Heslop arising from the retaliation allegations.  (ECF No. 25 at 6-12).  District

11  Judge Calabretta adopted Judge Barnes' findings in full on July 24, 2023.  (ECF No. 34.)

12                **DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

13  **I.        Parties' Briefing**

14                **A.  Defendant's Motion**

15        Defendants move for partial summary judgment, asserting plaintiff's First Amendment

16  retaliation, Fourteenth Amendment Equal Protection, state law assault, and Bane Act claims fail

17  as a matter of law and defendants are entitled to qualified immunity.  Defendants also assert that

18  they are immune from plaintiff's official capacity claims, except those for prospective relief, and

19  that plaintiff cannot establish entitlement to declaratory relief or punitive damages.  Defendant

20  Heslop does not move for summary judgment on plaintiff's Eighth Amendment excessive force

21  or civil battery claims because "the parties dispute whether Counselor Heslop used force on

22  [plaintiff]."  (ECF No. 84 at 2-3.)

23                **B.  Plaintiff's Opposition**

24        Plaintiff opposes defendants' motion (ECF No. 82) and submits a sworn declaration (id. at

25  13-19) and several exhibits (id. at 20-62) in support.[2]  Plaintiff reproduced defendants' itemized

26

27  [2]  On February 11, 2025, the undersigned ordered plaintiff to respond to defendants' motion and
    show cause for failing to do so in a timely manner.  (ECF No. 81.)  Plaintiff responded on
28  February 28, 2025.  (ECF No. 83.)  For good cause shown, the order is discharged.

1    statement of facts as required by Local Rule 260(b) and marked by hand which facts are

2    "admitted" and which are "disputed." (Id. at 63-78.)  However, plaintiff failed to include with

3    each handwritten denial "a citation to the particular portions of any pleading, affidavit,

4    deposition, interrogatory answer, admission, or other document relied upon in support of that

5    denial." See Local Rule 260(b); Fed. R. Civ. Pro. 56(c)(1)(A) ("A party asserting that a fact . . .

6    is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the

7    record.").  On reply, defendants argue that plaintiff's failure to properly dispute their material

8    facts warrants grant of summary judgment in their favor.  (ECF No. 84 at 2.)

9         "Pro se litigants must follow the same rules of procedure that govern other litigants."

10   King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987) (citation omitted), overruled on other grounds,

11   Lacey v. Maricopa County, 693 F.3d 896, 928 (9th Cir. 2012) (en banc).  However, it is well-

12   established that district courts must "construe liberally motion papers and pleadings filed by pro

13   se inmates and should avoid applying summary judgment rules strictly." Thomas v. Ponder, 611

14   F.3d 1144, 1150 (9th Cir. 2010).  Accordingly, the court considers the entire record before it

15   despite plaintiff's failure to be in strict compliance with the Local Rules.  See Adv. Comm. Note

16   to 2010 Amendments to Fed. R. Civ. P. 56(e)(4) ("[T]he court may seek to reassure itself by some

17   examination of the record before granting summary judgment against a pro se litigant.").

18        However, the court will only consider the assertions in plaintiff's opposition that have

19   evidentiary support in the record.  A party's mere claim that a matter is "disputed" does not

20   suffice to dispute a fact that is supported by competent evidence.  See Coverdell v. Dep't of Soc.

21   & Health Servs., 834 F.2d 758, 762 (9th Cir. 1987) (recitations of unsworn factual allegations do

22   not adequately oppose competent evidence presented in a motion for summary judgment); Burch

23   v. Regents of Univ. of California, 433 F.Supp.2d 1110, 1119 (E.D. Cal. 2006) ("statements in

24   declarations based on speculation or improper legal conclusions, or argumentative statements, are

25   not facts and likewise will not be considered on a motion for summary judgment" (emphasis

26   omitted)).

27   /////

28   /////

3

1    **II.    Statement of Facts**[3]

2        **A.  Plaintiff's Initial Classification Committee Review**

3        Plaintiff arrived at CHCF on November 28, 2018.  (SMF 3.)  As a new arrival, plaintiff

4    was awaiting an initial classification committee review, which is generally scheduled to take

5    place within two weeks of an inmate's arrival to CHCF.  (SMF 4.)  The initial classification

6    committee review is a meeting to review and approve an inmate's endorsement to CHCF and

7    determine what type of programming the inmate qualifies for.  (SMF 5.)  In preparation of the

8    review, correctional counselors receive a caseload of inmates who recently arrived at CHCF.  The

9    correctional counselors conduct research into the inmates' backgrounds and create summary

10   chronologies to present at the initial classification committee reviews.  (Id.)  The counselors look

11   at inmates' case factors, including custody status, previous housing facilities, time left on

12   sentence, time spent in prison, visit restrictions, and whether the inmates had any discipline.  The

13   counselor may also interview the subject inmates as part of the research process.  (Id.)

14       Defendant Heslop was assigned to plaintiff's initial classification committee scheduled for

15   December 18, 2018.  (SMF 6.)  He interviewed plaintiff as part of his workup on December 10,

16   2018, and discussed what could happen at the upcoming initial classification committee.  (SMF

17   7.)  Defendant Heslop believed the meeting with plaintiff went well and that they had built

18   rapport.  (Id.)  Plaintiff disputes this characterization and claims he took Heslop's "statements,

19   tone and motions" during this meeting "to be threatening" and left Heslop's office.  (Declaration

20   of Plaintiff ("Pltf. Decl.") ¶¶ 2, 13, ECF No. 82 at 13-14.)

21       Plaintiff attended his initial classification committee on December 18, 2018.  (SMF 9.)

22   The committee agreed to look into plaintiff's visiting restrictions, which prohibited visits with

23   family members.  Plaintiff disagreed with the temporary visitation restrictions.  (SMF 10.)  A

24   subsequent initial classification committee was scheduled for January 15, 2019, due to plaintiff's

25   stated concerns of not having met with a staff assistant prior to his committee.  (SMF 11.)

26

27   [3]  Plaintiff disputes most of defendants' material facts but without explanation or citation to the
     record.  (ECF No. 82 at 63-78.)  The following facts are based on defendants' Statement of
28   Material Facts (ECF No. 51-3) with plaintiff's dispute noted where evident from the record.

On January 7, 2019, while en route to his mental health group, plaintiff told Counselor Barocio that he did not want defendant Heslop as his staff assistant for the next classification committee. (SMFs 13, 15; Pltf. Decl. ¶ 3, ECF No. 82 at 14.) Because Counselor Heslop believed he had built rapport with plaintiff, he went to plaintiff in Mental Health Group room 4 at the Enhanced Outpatient (EOP) Mental Health clinic to discuss the matter. (SMFs 16, 17.)

When he arrived, defendant Heslop asked plaintiff to step into the hallway so they could speak. (SMF 18.) Plaintiff alleges defendant's arrival interrupted the therapy session. (Pltf. Decl. ¶ 4, ECF No. 82 at 14-15.) The parties agree that plaintiff refused to speak with defendant. (SMF 19; Pltf. Decl. ¶ 4, ECF No. 82 at 15.) Defendant Heslop then ordered the other occupants to leave the room. (SUF 22; Pltf. Decl. ¶ 4, ECF No. 82 at 15.) Officer Lene then arrived. (Id.) Plaintiff told defendant Heslop that he did not want him as his staff assistant. (SMF 24.) Defendant Heslop then ordered plaintiff to leave. (SMF 25; Pltf. Decl. ¶ 5, ECF No. 82 at 15.) Plaintiff refused but indicated he would comply with orders from Officer Lene. (SMF 26.) The parties agree plaintiff again refused to leave. (SMF 28; Pltf. Decl. ¶ 5, ECF No. 82 at 16.)

Defendant Heslop contends he then put plaintiff in mechanical restraints and placed his right hand on the back of plaintiff's left arm to escort him to his housing unit. (SMF 30.) Plaintiff went limp and defendant Heslop guided him to the ground to prevent further injury. Officer Voong escorted plaintiff out of the clinic. (SMFs 30-32.) Plaintiff, however, alleges that after he refused to leave, defendant Heslop "immediately without notice grabbed me angrily and with force shoved me against the wall" and handcuffed him. (Pltf. Decl. ¶ 5, ECF No. 82 at 16.)

### B. Plaintiff's Grievance and Defendant Heslop's Rules Violation Report

Immediately following the incident, defendant Heslop returned to his office and began preparing an RVR for delaying a peace officer in the performance of duties. (SMF 33.) He did not complete the RVR until January 9, 2019, because he had to prepare for and attend committee meetings on January 8, 2019. (Id.) Also immediately following the incident, plaintiff signed inmate grievance log number CHCF-19-00132 alleging that defendant Heslop shoved him against a wall and put handcuffs on him. (SMF 36.) CHCF received the grievance on January 8, 2019. (Id.) Defendant Heslop claims to have learned of plaintiff's grievance for the first time on

5

January 11, 2019. (SMF 37.) Plaintiff, however, states that a Lt. Burkhart told him on January 8, 2019, that "Heslop denied all of my allegations." (Pltf. Decl. ¶ 12, ECF No. 82 at 19.)

On February 7, 2019, second-level reviewers conducted a confidential Appeal Inquiry into the allegations and concluded that defendant Heslop did not violate CDCR policy. (SMF 38.) Plaintiff appealed the second-level decision, on February 20, 2019, and on June 7, 2019, third-level reviewers denied the appeal. (SMF 39.)

### C. Plaintiff's RVR Disciplinary Hearing

Defendant Lieutenant Sawma was assigned as plaintiff's staff assistant for the rules violation process. (SMF 42.) Staff assistants for rules violations inform inmates of their rights and of the disciplinary hearing procedures, advise and assist in the inmate's preparation for a disciplinary hearing, ensure that the inmate's position is understood, and ensure that the inmate understands the decisions reached at the hearing. (SMF 43.) Staff assistants are prohibited from giving legal advice or specifying the position the inmate should take in any disciplinary proceeding. (Id.)

On January 11, 2019, defendant Sawma served plaintiff with a copy of the RVR and met with him to prepare for the RVR hearing. (SMF 44.) Plaintiff requested four witnesses: (1) "Psych Tech Group Room 4 @ 0900 (female);" (2) C/O "Leeland;" (3) Inmate Muhammad; and (4) Inmate Wong. (SMF 45.) Plaintiff was unable to provide more information about the witnesses, including CDCR numbers or housing unit locations for the inmates. Based on the insufficient identifying information for these witnesses, Lieutenant Sawma was unable to identify the psychological technician or inmates Wong or Muhammad. Defendant Sawma was only able to identify Officer Lene as a witness. (Id.) Plaintiff also requested camera footage of the incident be presented at the hearing. (SMF 46.) Defendant Sawma forwarded plaintiff's request to the on-duty Lieutenant, but the request was denied because there was no footage of the incident. (Id.)

Defendant Sawma met with plaintiff again on January 17, 2019, to give him a copy of the mental health assessment. (SMF 48.) The assessment concluded that plaintiff's mental illness contributed to his behavior on January 7, 2019, because Wilkins suffers from hearing voices and symptoms of Post-Traumatic Stress Disorder ("PTSD") stemming from a similar incident with an

1    officer at another facility.  The clinician who prepared it recommended that "[i]f the inmate is

2    found guilty of the offense, the hearing officer or senior hearing officer should consider the fact

3    that the inmate suffers from hearing voices and symptoms of [PTSD], therefore long and

4    extensive isolation may increase the possibility of decompensation for the inmate."  (SMF 49.)

5        A disciplinary hearing on the RVR was held on January 25, 2019, before defendant

6    hearing official Lieutenant Velasquez.  (SMF 50.)  Defendant Velasquez noted that plaintiff

7    requested inmates Muhammad and Wong and another staff member as witnesses but did not

8    provide the inmates' CDCR numbers or the staff member's name.  As a result, Defendant

9    Velasquez was unable to identify the requested witnesses and, therefore, unable to fulfill

10   Wilkins's request.  (SMF 52.)  Defendant Velasquez considered the mental health assessment in

11   adjudicating the rules violation.  Specifically, he considered that plaintiff's mental health

12   contributed to his behavior on January 7, 2019.  (SMF 53.)

13       Plaintiff's request to present camera footage at the RVR hearing could not be fulfilled

14   because there was no camera footage of the incident from either the mental health group room or

15   the hallway.  (SMF 54.)  To the extent plaintiff requested to present additional documentary

16   evidence, specifically documentary evidence concerning a similar incident at a different

17   institution, that evidence was duplicative of the mental health assessment, which referenced the

18   similar incident.  (SMF 55.)  After considering the evidence, Defendant Velasquez found Wilkins

19   guilty of the RVR for the charge for delaying a peace officer on January 7, 2019.  (SMF 56.)

20       Plaintiff claims defendant Velasquez denied his requests to present camera footage, call

21   witnesses, and present documentary evidence and disregarded his mental health evaluation.  (Pltf.

22   Decl. ¶ 7, ECF No. 82 at 16-17.)  Defendant Velasquez told plaintiff that "when a peace officer

23   tells him to do something he is to do it, period."  (Id. ¶ 7.)  Defendant Sawma said she was not his

24   lawyer when he asked for help.  (Id.)  Plaintiff requested the IFRC report required for all inmate

25   allegations of excessive/unreasonable force, but defendants' counsel told him CHCF officials did

26   not conduct a review because no force was used.  (Id. ¶ 10.)

27   ////

28   ////

7

1
2

III.    **Legal Standard**

   **A.  Summary Judgment**

3    Summary judgment is appropriate when it is demonstrated that there "is no genuine

4 dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R.

5 Civ. P. 56(a).  Under summary judgment practice, "[t]he moving party initially bears the burden

6 of proving the absence of a genuine issue of material fact."  In re Oracle Corp. Sec. Litig., 627

7 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).  The

8 moving party may accomplish this by "citing to particular parts of materials in the record,

9 including depositions, documents, electronically stored information, affidavits or declarations,

10 stipulations (including those made for purposes of the motion only), admissions, interrogatory

11 answers, or other materials" or by showing that such materials "do not establish the absence or

12 presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to

13 support the fact."  Fed. R. Civ. P. 56(c)(1).

14    "Where the non-moving party bears the burden of proof at trial, the moving party need

15 only prove that there is an absence of evidence to support the non-moving party's case."  Oracle

16 Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325); see also Fed. R. Civ. P. 56(c)(1)(B).

17 Indeed, summary judgment should be entered, "after adequate time for discovery and upon

18 motion, against a party who fails to make a showing sufficient to establish the existence of an

19 element essential to that party's case, and on which that party will bear the burden of proof at

20 trial."  Celotex, 477 U.S. at 322.  "[A] complete failure of proof concerning an essential element

21 of the nonmoving party's case necessarily renders all other facts immaterial."  Id. at 323.  In such

22 a circumstance, summary judgment should "be granted so long as whatever is before the district

23 court demonstrates that the standard for the entry of summary judgment, as set forth in Rule

24 56(c), is satisfied."  Id.

25    If the moving party meets its initial responsibility, the burden then shifts to the opposing

26 party to establish that a genuine issue as to any material fact actually does exist.  Matsushita Elec.

27 Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).  In attempting to establish the

28 existence of this factual dispute, the opposing party may not rely upon the allegations or denials

1    of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or

2    admissible discovery material, in support of its contention that the dispute exists. See Fed. R.

3    Civ. P. 56(c). The opposing party must demonstrate that the fact in contention is material, i.e., a

4    fact "that might affect the outcome of the suit under the governing law," and that the dispute is

5    genuine, i.e., "the evidence is such that a reasonable jury could return a verdict for the nonmoving

6    party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

7          In the endeavor to establish the existence of a factual dispute, the opposing party need not

8    establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual

9    dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at

10   trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce

11   the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"

12   Matsushita, 475 U.S. at 587 (quoting Adv. Comm. Note to 1963 Amendments to Fed. R. Civ. P.

13   56(e)).

14         In resolving the summary judgment motion, the evidence of the opposing party is to be

15   believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the

16   facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475

17   U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's

18   obligation to produce a factual predicate from which the inference may be drawn. See Richards

19   v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902

20   (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than

21   simply show that there is some metaphysical doubt as to the material facts.... Where the record

22   taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no

23   'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

## DISCUSSION

25         Defendants' motion for partial summary judgment covers three categories of issues: (1)

26   the assault, First Amendment retaliation, and Bane Act claims against defendant Heslop; (2) the

27   Fourteenth Amendment Equal Protection claim against defendants Sawma and Velasquez; and (3)

28   defendants' challenges to plaintiff's requested relief. The court will address each in turn.

9

1    **I.      Defendant Heslop**

2          **A.  Civil Assault**

3          Defendant Heslop moves for summary judgment on plaintiff's state law assault claim.  To

4    make out a claim for civil assault under California law, a plaintiff must establish (1) that

5    defendant intended to cause harmful or offensive contact, or the imminent apprehension of such

6    contact, and (2) that plaintiff was put in imminent apprehension of such contact.  <u>Austin v.</u>

7    <u>Terhune</u>, 367 F.3d 1167, 1172 (9th Cir. 2004) (internal quotation marks omitted).

8          Defendant Heslop argues that plaintiff did not anticipate the alleged harmful touching, a

9    required element for civil assault.  (ECF No. 51-1 at 18.)  He cites the following excerpt of

10   plaintiff's deposition testimony as evidentiary support:

11        Q.      And did you see Counselor Heslop coming towards you right before he
                  used the force on you?
12

13        A.      No.    [….]

14        Q.      Okay.  So you knew – you first knew that Counselor Heslop was using
                  that unreasonable force on you when he first made contact with you?

15        A.      When I was shoved against the wall, yeah.

16        Q.      Okay. In other words, you didn't see it coming?

17        A.      No.  He was behind me.

18   (Wilkins Depo. 90:22-24, 91:3-8, ECF No. 51-4 at 57-58.)  Because plaintiff did not observe

19   Heslop approach him from behind, defendant argues, plaintiff was not put in imminent

20   apprehension of harmful or offensive contact.  (ECF No. 51-1 at 19.)

21         Defendant has met his initial burden.  The burden then shifts to plaintiff to identify a

22   genuine issue of material fact.  Plaintiff argues that the evidence shows Heslop placed him "in

23   apprehension of imminent offensive conduct."  (ECF No. 82 at 5.)  Plaintiff objected to being

24   alone with Heslop "because I feared for my safety."  (Pltf. Decl. ¶ 4, ECF No. 82 at 14-15.)  Upon

25   voicing these objections to Heslop and Officer Lene, Heslop "immediately without notice

26   grabbed me angrily and with force shoved me against the wall[.]"  (<u>Id.</u>, ¶ 5.)  Plaintiff establishes

27   a foundation for his fear by disputing Heslop's positive characterization of their first meeting on

28   December 10, 2018.  (<u>See</u> Declaration of S. Heslop ("Heslop Decl.") ¶ 4, ECF No. 51-5 at 2 ("I

10

1   believed the meeting with Wilkins went well and that we built a rapport").)  By contrast, Plaintiff

2   took Heslop's "statements, tone and motions" during that meeting "to be threatening" and left

3   Heslop's office.  (Pltf. Decl. ¶¶ 2, 13, ECF No. 82 at 13-14.)

4          Defendant counters that plaintiff's fear "does not equate to imminent apprehension of

5   harmful or offensive contact."  (ECF No. 84 at 3.)  The court agrees.  "[A] specific apprehension

6   of imminent battery is required—neither apprehension of some other harm, nor fear of future

7   battery will trigger liability for assault."  Sheehan v. United States, 896 F.2d 1168, 1171 n.4 (9th

8   Cir. 1990), amended, 917 F.2d 424 (9th Cir. 1990); see also Booke v. Cnty. of Fresno, 98 F.

9   Supp. 3d 1103, 1130 (E.D. Cal. 2015) ("The tort of assault is complete when anticipation of harm

10  occurs.") (quoting Kiseskey v. Carpenters' Trust for S. Cal., 144 Cal.App.3d 222, 232 (Cal. Ct.

11  App. 1983).  While plaintiff's evidence supports a generalized fear of Heslop, plaintiff has not

12  raised a genuine issue regarding his anticipation of Heslop's specific alleged battery.  Plaintiff's

13  sworn statement that the alleged battery happened "immediately without notice" is consistent

14  with his deposition testimony that he didn't see it coming before he was shoved into the wall from

15  behind.  Plaintiff cites several cases for support (see ECF No. 82 at 5), but none concern civil

16  assault or otherwise support a showing of imminent apprehension here.[4]  Accordingly, the court

17  recommends that summary judgment be granted to defendant Heslop on plaintiff's assault claim.

18                          **B.  First Amendment Retaliation**

19          Defendant Heslop also moves for summary judgment on plaintiff's First Amendment

20  Retaliation claim.  As screened in by the previously assigned magistrate judge, the SAC alleged

21  that defendant Heslop violated plaintiff's First Amendment right by issuing a retaliatory RVR

22  after plaintiff filed an inmate grievance against him.  (ECF No. 25 at 7.)

23          "Within the prison context, a viable claim of First Amendment retaliation entails five

24  basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2)

25  because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's

26  ───────────────────

27  [4]  Plaintiff primarily relies on the factually similar case Watts v. McKinney, 394 F.3d 710, 711
    (9th Cir. 2005). There, the Ninth Circuit affirmed that a prisoner-plaintiff's sworn declaration
    created a genuine issue of material fact as to his Eighth Amendment excessive force claim.

28  However, plaintiff's reliance is misplaced because Watts did not concern civil assault.

1    exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate

2    correctional goal.  Rhodes v. Robinson, 408 F.3d 559 567-68 (9th Cir. 2005) (citations omitted).

3    Filing an inmate grievance is a protected action under the First Amendment.  Bruce v. Ylst, 351

4    F.3d 1283, 1288 (9th Cir. 2003).

5          Defendant Heslop argues that plaintiff's retaliation claim fails for a lack of causation, i.e.,

6    an absence of retaliatory motive.  (ECF No. 51-1 at 19-20.)  Specifically, defendant asserts he did

7    not file the RVR with retaliatory intent because he was not aware of plaintiff's grievance when he

8    filed it.  Heslop claims he began drafting the RVR on January 7, 2019, immediately after the

9    incident, but did not complete and submit the RVR until January 9, 2019.  (Heslop Decl. ¶¶ 18-

10   19, ECF No. 51-5 at 4.)

11         Plaintiff submitted his grievance on January 7, 2019.  CHCF received it on January 8,

12   2019.  (Declaration of J. Burns ("Burns Decl."), Exh. F, ECF No. 51-4 at 84.)  Although

13   defendant Heslop submitted the RVR the day after CHCF received plaintiff's grievance, he

14   claims that he first learned of the grievance on January 11, 2019, and was not aware that plaintiff

15   had made allegations of excessive force against him before that date.  (Heslop Decl. ¶¶ 18-19,

16   ECF No. 51-5 at 4.)  Heslop declares that he did not submit the RVR for retaliatory reasons or for

17   any improper purposes: "Rather, I submitted the RVR because [plaintiff's] conduct impermissibly

18   delayed the duties of several peace officers."  (Id. ¶ 19.)

19         Defendant Heslop cites the RVR document's "creation date" of January 7, 2019, to prove

20   his lack of retaliatory intent.  (ECF No. 84 at 5 (citing Heslop Decl., Exh. A, ECF No. 51-5 at 7).)

21   The court disagrees that the creation date is dispositive as to any retaliatory intent.  Even if the

22   timeline suggests he lacked such intent when he began drafting the RVR, a reasonable trier of fact

23   could still infer that Heslop submitted the RVR with retaliatory motive on January 9, on the

24   premise that he may not have yet resolved to submit it when he began drafting it.  However,

25   because defendant Heslop attests he was unaware of the grievance until January 11, 2019, he has

26   met his initial burden as to causation.

27         The burden again shifts to plaintiff.  To establish causation, a plaintiff must "put forth

28   evidence of retaliatory motive, that, taken in the light most favorable to him, presents a genuine

1    issue of material fact as to [the defendant's] intent[.]"  Shepard v. Quillen, 840 F.3d 686, 689 (9th

2    Cir. 2016).  To create a genuine issue of material fact on the question of retaliatory motive, a

3    plaintiff's showing must include "evidence that the defendant knew of the protected speech."

4    Corales v. Bennett, 567 F.3d 554, 568 (9th Cir. 2009).

5         In his sworn declaration, plaintiff claims a Lt. Burkhart told him on January 8, 2019, that

6    defendant Heslop "denied all of my allegations."  (Pltf. Decl. ¶ 12, ECF No. 82 at 19.)  Lt.

7    Burkhart's statement, plaintiff argues, indicates that Heslop knew about the grievance a day

8    before he submitted his RVR, and creates a genuine issue of disputed fact as to his retaliatory

9    motive.  (ECF No. 82 at 7.)

10        Heslop objects to Lt. Burkhart's statement as double hearsay that the court should

11   disregard.  (ECF No. 84 at 5.)  Defendant's objection is well taken.  A declaration used to oppose

12   a motion for summary judgment must "be made on personal knowledge [and] set out facts that

13   would be admissible in evidence[.]"  Fed. R. Civ. P. 56(c)(4).  Declarations containing double

14   hearsay generally fail Rule 56(c)(4) standards and may not be considered in deciding whether

15   material facts are at issue on summary judgment.  See Loomis v. Cornish, 836 F.3d 991, 996-97

16   (9th Cir. 2016) (reliance on hearsay insufficient to survive summary judgment); Winkler v. Nat'l

17   Union Fire Ins. Co. of Pittsburgh, Pa., 930 F.2d 1364, 1367 (9th Cir. 1991) (holding that

18   declaration asserting a statement of a third party is "inadmissible double hearsay which cannot be

19   considered on a motion for summary judgment").

20        To ensure a complete record of material facts, the court ordered defendants to produce the

21   use of force interview of plaintiff conducted by Lt. Burkhart.[5]  (ECF No. 85.)  Defendants lodged

22   a video of the interview with the court in response.  (ECF No. 86.)  Lt. Burkhart's interview of

23   plaintiff occurred on January 9, 2019, from 20:06 to 20:11.  Having reviewed the video, the court

24   finds that at no point during this particular use of force interview did Lt. Burkhart state that

25   defendant Heslop denied plaintiff's allegations.

26        Therefore, based on the record before the court, Lt. Burkhart's hearsay statement alone

27   _____

28   [5]  The court had previously granted plaintiff's motion to compel in part and ordered defendants to
     respond to plaintiff's request for the use of force interview by Lt. Burkhart.  (ECF No. 80.)

1    does not create a dispute as to the issue of causation.  Plaintiff's declaration recounts the

2    statement of non-party Lt. Burkhart for the truth of the matter asserted, and no hearsay exceptions

3    apply that would allow it to be introduced at trial.[6]  See Ortiz v. Alvarez, 341 F. Supp. 3d 1087,

4    1104 (E.D. Cal. 2018) (holding that plaintiff's recounting of third-party statement did not raise a

5    genuine issue of material fact on § 1983 retaliation claim).

6         The court has found no other evidence in plaintiff's opposition or the broader record that

7    raises a genuine issue regarding defendant Heslop's knowledge of the grievance before filing the

8    RVR.  Plaintiff testified at his deposition that defendant Heslop later mocked him for the

9    grievance, but his testimony did not address Heslop's knowledge before he filed the RVR.[7]  Thus,

10   no reasonable trier of fact could find for plaintiff on the material element of causation.  See

11   Arendale v. City of Memphis, 519 F.3d 587, 606–07 (6th Cir. 2008) (affirming grant of summary

12   judgment to defendant on Title VII retaliation claim where plaintiff's sole evidence of retaliatory

13   intent was inadmissible double hearsay).  Accordingly, the undersigned finds Heslop is entitled to

14   summary judgment on plaintiff's retaliation claim and the court need not address defendant's

15   qualified immunity arguments.

16        **C.  Bane Act**

17        Defendant Heslop moves for summary judgment on plaintiff's claim under the Bane Act,

18   Cal. Civ. Code § 52.1.  The Bane Act "provides a cause of action for violations of a plaintiff's

19   state or federal civil rights committed by 'threats, intimidation, or coercion.'"  Reese v. County of

20   Sacramento, 888 F.3d 1030, 1040-41 (9th Cir. 2018).  "To state a claim under the Bane Act, a

21   plaintiff must allege '(1) interference with or attempted interference with a state or federal

22   _____

23   [6] Defendants' related argument that plaintiff's declaration does not explain what specific
     "allegations" Lt. Burkhart was referring to is rejected.  (ECF No. 84 at 5.)  Based on the timing of
24   Lt. Burkhart's comment, it is reasonable to infer he was referring to the grievance allegations.

25   [7] The court disagrees with defendant's assertion that plaintiff's use of Lt. Burkhart's statement
     contradicts this deposition testimony.  (See ECF No. 84 at 5.)  At his deposition, plaintiff cited
26   defendant Heslop's taunting as evidence he knew about the grievance – not, as defendant suggests
     on reply, as evidence Heslop knew about the grievance before he filed the RVR.  (See Wilkins
27   Depo. 100:2-9, ECF No. 84-1 at 4.)  There is no contradiction because the deposition excerpt and
     declaration addressed two separate questions regarding Heslop's knowledge.
28

1    constitutional or legal right, and (2) the interference or attempted interference was by threats,

2    intimidation, or coercion.'" Guillen v. Carrillo, No. 1:19-cv-946 DAD HBK, 2022 WL 902883,

3    at *8 (E.D. Cal. Mar. 28, 2022), report and recommendation adopted, No. 1:19-cv-0946 DAD

4    HBK PC, 2022 WL 1557760 (E.D. Cal. May 17, 2022) (citations omitted).

5          The parties disagree on the nature of plaintiff's Bane Act claim.  Defendant Heslop argues

6    he is entitled to judgment as a matter of law on the claim due to its shared nexus of facts with

7    plaintiff's First Amendment retaliation claim.  (ECF No. 51-1 at 23.)  Plaintiff argues his Bane

8    Act claim has nothing to do with his First Amendment claim.  Instead, plaintiff asserts a "classic

9    violation" of the Bane Act based on defendant Heslop's interruption of his mental health therapy

10   on January 7, 2019, and use of coercion, threats, and intimidation "to force plaintiff to speak with

11   him and be alone with him when he was terrified to do so."  (ECF No. 82 at 7.)  Defendant replies

12   that Judge Barnes screened in the Bane Act claim on the First Amendment retaliation facts, and

13   he relied on her screening order in defending this case.  (ECF No. 84 at 6.)

14         In the operative screening order, Judge Barnes did expressly determine that plaintiff stated

15   a cognizable Bane Act claim based on the same facts as his First Amendment retaliation claim:

16   "Above, the court found plaintiff had alleged sufficient facts to state a First Amendment

17   retaliation claim.  Facts which support a First Amendment retaliation claim on screening are

18   sufficient to support a Bane Act claim.  Accordingly, plaintiff has alleged at least minimally

19   sufficient facts to state a Bane Act claim on screening."  (See ECF No. 25 at 12 (citations

20   omitted).)  Plaintiff then elected to proceed on the cognizable claims as screened in and preserved

21   his right to appeal.  (ECF No. 26.)  Judge Calabretta later adopted Judge Barnes' findings in full.

22   (ECF No. 34.)  In sum, plaintiff had ample notice of the nature of his cognizable Bane Act claim,

23   and the undersigned declines to consider the Bane Act claim as interpreted by plaintiff in his

24   opposition.

25         "[T]he Bane Act does not require the 'threat, intimidation or coercion' element of the

26   claim to be transactionally independent from the constitutional violation alleged," but rather

27   requires a "showing of the defendant's specific intent to violate the plaintiff's constitutional

28   rights."  Rodriguez v. Cnty. of Los Angeles, 891 F.3d 776, 802 (9th Cir. 2018).  "[W]hether a

constitutional violation occurred and whether that violation was accompanied by any threats, intimidation or coercion are separate analytical inquiries (albeit with intertwining facts)." Barsamian v. City of Kingsburg, 597 F. Supp. 2d 1054, 1057 (E.D. Cal. 2009). Because the first element of a Bane Act claim requires a showing that a defendant interfered with, or attempted to interfere, a plaintiff's civil rights, a plaintiff's failure to raise a genuine issue with respect to the underlying § 1983 claim "renders it unnecessary for the Court to consider whether the alleged acts of [defendant] constituted threats, intimidation, or coercion." See Menefield v. Anderson, No. CV-21-4910 VAP PLA, 2023 WL 1453165, at *14 (C.D. Cal. Jan. 9, 2023), report and recommendation adopted, No. cv-21-4910 VAP PLA, 2023 WL 1448020 (C.D. Cal. Feb. 1, 2023), aff'd, No. 23-55148, 2024 WL 4589803 (9th Cir. Oct. 28, 2024).

As described above, plaintiff has failed to establish a genuine dispute as to the causation element of his First Amendment retaliation claim. Plaintiff, then, has also failed to establish a genuine dispute as to the first element of his Bane Act claim that defendant Heslop interfered with, or attempted to interfere with, his First Amendment rights. Accordingly, the undersigned finds it unnecessary to address the second element of plaintiff's Bane Act claim and recommends that summary judgment be granted to defendant Heslop. See Menefield, 2023 WL 1453165, at *14 (finding plaintiff's failure to establish a genuine dispute as to his First Amendment retaliation claim defeated his related Bane Act claim); Dixie v. J. Amarillas, No. CV-20-4287 JLS DFM, 2023 WL 7351798, at *14 (C.D. Cal. Sept. 13, 2023), report and recommendation adopted sub nom. Dixie v. Amarillas, No. CV-20-4287 JLS DFM, 2023 WL 7345836 (C.D. Cal. Nov. 7, 2023) (same).

## II.    Defendants Velasquez and Sawma

### A.  Plaintiff's Request for Documents, Fed. R. Civ. Pro. 56(d)

Defendants Velasquez and Sawma move for summary judgment on plaintiff's Fourteenth Amendment equal protection claim. In his opposition, plaintiff requests further discovery on this claim pursuant to Federal Rule of Civil Procedure Rule 56(d):

> Plaintiff respectfully requests that the court order Defendants to provide all the completed disciplinary hearing results (redacted) from January 1st 2018 to December 31st 2019 at CHCF and (5) Complete disciplinary action hearing

16

1

2

3

> results for the same time period from three other random CDCR institutions to demonstrate that Plaintiff was treated differently from similarly situated inmates in relation to witnesses, camera review of incident, presenting documentary evidence and consideration of RVR mental health assessments.

4   (ECF No. 82 at 10.)  Defendants argue that plaintiff's Rule 56(d) request proves he lacks

5   evidence to establish genuine issues of material fact with respect to his equal protection claim, but

6   do not challenge the request itself.  (ECF No. 84 at 6-7.)

7        To prevail on a request for additional discovery under Rule 56(d), a party must show that

8   "(1) it has set forth in affidavit form the specific facts it hopes to elicit from further discovery; (2)

9   the facts sought exist; and (3) the sought-after facts are essential to oppose summary judgment."

10  Midbrook Flowerbulbs Holland B.V. v. Holland Am. Bulb Farms, Inc., 874 F.3d 604, 619–20

11  (9th Cir. 2017) (quoting Family Home & Fin. Ctr., Inc. v. Fed. Home Loan Mortg. Corp., 525

12  F.3d 822, 827 (9th Cir. 2008)).  A district court's refusal to reopen discovery under Rule 56(d) is

13  an abuse of discretion "only if 'the movant diligently pursued previous discovery opportunities,

14  and if the movant can show how allowing additional discovery would have precluded summary

15  judgment.'"  Cornwell v. Electra Cent. Credit Union, 439 F.3d 1018, 1026 (9th Cir. 2006)

16  (quoting Panatronic USA v. AT & T Corp., 287 F.3d 840, 846 (9th Cir. 2002)).

17       Plaintiff has not made the requiring showing to justify further discovery under Rule 56(d).

18  His opposition declaration does not address his request for discovery at all, let alone satisfy the

19  requirements of Rule 56(d).  (See ECF No. 82 at 15-19.)  Nor has plaintiff demonstrated his

20  diligence; defendants filed their motion on February 5, 2024, yet plaintiff did not request the

21  documents until his opposition dated February 28, 2025, more than a year later.  (ECF No. 82.)

22  During that time, the court resolved three motions to compel filed by plaintiff and gave him

23  several extensions of time to conduct further discovery and oppose defendants' motion.  (See

24  ECF Nos. 57, 73, and 80.)  For these reasons, plaintiff's request for documents pursuant to Rule

25  56(d) is denied.

26       **B. Fourteenth Amendment Equal Protection**

27       Turning to the merits of his equal protection claim, plaintiff alleges that defendants

28  Velasquez and Sawma discriminated against him as a "class of one" by denying him: (1) the right

1   to call his requested witnesses; (2) the assistance of a staff assistant; (3) the ability to present

2   documentary evidence; (4) the right to have his mental health assessment considered; and (5) the

3   opportunity to have camera footage presented during the hearing.  (ECF No. 20 at 8-13.)

4        "The Equal Protection Clause of the Fourteenth Amendment commands that no State shall

5   'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a

6   direction that all persons similarly situated should be treated alike."  City of Cleburne v. Cleburne

7   Living Center, 473 U.S. 432, 439 (1985) (quoting Plyler v. Doe, 457 U.S. 202, 216 (1982)).  To

8   state an equal protection claim under a "class of one" theory, a plaintiff must allege facts showing

9   he "has been intentionally treated differently from others similarly situated and that there is no

10  rational basis for the difference in treatment."  Village of Willowbrook v. Olech, 528 U.S. 562,

11  564 (2000).  "Similarly situated" individuals are those "who are in all relevant respects alike."

12  Nordlinger v. Hahn, 505 U.S. 1, 10 (1992).

13       Defendants Velasquez and Sawma have met their initial burden.  They offer sworn

14  statements that they did not intentionally discriminate against plaintiff or treat him differently

15  than other inmates facing RVR hearings.  (Declaration of Sawma ("Sawma Decl.") ¶ 7, ECF No.

16  51-6 at 2; Declaration of Velasquez ("Velasquez Decl.") ¶ 8, ECF No. 51-7 at 2.)  They offer

17  explanations for the alleged procedural violations at the hearing.  For example, Velasquez states

18  that he did consider the mental health assessment, and plaintiff's request to present documentary

19  evidence was denied because the evidence was duplicative of his mental health assessment.

20  (Velasquez Decl. ¶¶ 4-6, ECF No. 51-7 at 2.)  Defendant Sawma met with plaintiff twice before

21  the RVR hearing and Sawma's request for the video on plaintiff's behalf was denied because

22  there was no footage of the incident.  (Sawma Decl. ¶¶ 3, 5-6, ECF No. 51-6 at 2.)

23       The burden then shifts to plaintiff to raise genuine issues of material fact as to defendants'

24  intentional discrimination.  Plaintiff wrote "disputed" by hand next to nearly all of defendants'

25  statements of material fact concerning Velasquez and Sawma (see ECF No. 82 at 73-78) but does

26  not elaborate or support these denials with citations to the record.  As such, plaintiff's denials of

27  defendants' statement of facts do not create genuine issue of material fact with respect to

28  plaintiff's equal protection claim.  See Coverdell, 834 F.2d at 762.

1     Further, plaintiff's evidence contains only speculative claims of discrimination.  In his

2   declaration, plaintiff repeats the alleged procedural violations at his RVR hearing but offers no

3   evidence that he was treated differently from specific, similarly situated inmates.  (See Pltf. Decl.

4   ¶ 7, ECF No. 82 at 17.)  Plaintiff's equal protection theory appears to be based on a hypothetical

5   group of prisoners who received the procedural safeguards he was denied.  (See Wilkins Depo.

6   105:14-20, ECF No. 51-4 at 61 ("I'm sure the evidence will show, and the hearings from

7   Velasquez, that he allowed witnesses to be called, that he allowed camera footage to be

8   brought[.]"); id. at 107:21-25 to 108:1-2 ("I was not allowed to bring witnesses or camera

9   footage, as similarly situated inmates are allowed to do for their RVR hearings").)  But absent

10  specific evidence of similarly situated inmates receiving those safeguards, plaintiff has not raised

11  a triable issue of fact.[8]  See Cyprian v. Constable, No. 2:19-cv-0689 DJC AC P, 2023 WL

12  7928037, at *5 (E.D. Cal. Nov. 16, 2023), report and recommendation adopted, No. 2:19-cv-0689

13  DJC AC, 2024 WL 86420 (E.D. Cal. Jan. 8, 2024) (granting summary judgment to defendants on

14  "class of one" claim where plaintiff "fails to identify any evidence of similarly situated inmates

15  being provided with the sort of video evidence that he was allegedly denied").

16     The undersigned recognizes that plaintiff seeks further discovery to address the lack of

17  evidentiary support for his equal protection claim.  But as discussed above, plaintiff did not meet

18  the required showing under Rule 56(d) and had ample time to request relevant documents during

19  extended period of fact discovery.  Accordingly, defendants should be granted summary

20  judgment as to plaintiff's equal protection claim and the court need not address defendants'

21  qualified immunity arguments.

22  /////

23

24  ────────────────

[8]  The undersigned is skeptical that defendants Velasquez and Sawma had insufficient
25  information to locate plaintiff's requested witnesses.  (See Sawma Decl. ¶ 4, ECF No. 51-6 at 2;
Velasquez Decl. ¶ 3, ECF No. 51-7 at 2.)  Plaintiff provided the last names of his two inmate
26  witnesses and identified them as part of his mental health group.  (Wilkins Depo. 64-10-19, ECF
No. 51-4 at 53.)  It was not reasonable or fair of Sawma and Velasquez to expect plaintiff to know
27  the witnesses' CDCR numbers or housing units.  However, this does not create a triable issue
since plaintiff failed to offer any evidence that he was treated differently from others similarly
28  situated.

1          **III.    Defendants' Challenges to Plaintiff's Requested Relief**

2                  **A.  Eleventh Amendment Immunity**

3          The Eleventh Amendment bars claims for damages against state officials sued in their

4  official capacity.  Lewis v. Clarke, 581 U.S. 155, 163 (2017) (citing Graham v. Connor, 473 U.S.

5  159, 167 (1985)).  Here, plaintiff sues each defendant in their official and individual capacities

6  and seeks "injunct[ive] relief, prospective relief, equitable relief, compensatory damages, punitive

7  damages, declaratory relief, and any and all relief deemed warranted by the court."  (ECF No. 20

8  at 2, 19.)  Defendants claim Eleventh Amendment immunity from all of plaintiff's official

9  capacity claims "except those for prospective injunctive relief."  (ECF No. 51-1 at 18.)

10         Plaintiff asserts that defendants are "not exempt in their official capacities from

11  declaratory, injunct[ive], prospective or equitable relief," but does not dispute their immunity as

12  to his claims for damages.  (See ECF No. 82 at 3-4.)  Because there is no dispute that defendants

13  are state officials sued in their official capacities, the undersigned recommends that defendants be

14  granted summary judgment as to plaintiff's remaining official capacity claims for damages.

15                 **B.  Declaratory Relief**

16         Defendants argue that plaintiff's request for declaratory relief should be denied because it

17  is "subsumed by his damages claims."  (ECF No. 51-1 at 27.)  Defendants rely on Rhodes, where

18  an inmate proceeding pro se sought damages, injunctive relief, and a declaratory judgment that

19  prison officers violated his First Amendment rights.  The Ninth Circuit held that "because his

20  claim for damages necessarily entails a determination whether the officers' alleged conduct

21  violated his rights, his separate request for declaratory relief is subsumed by his damages action."

22  Rhodes, 408 F.3d at 565-66 n.8.

23         Plaintiff counters that declaratory relief "will provide clarity to CHCF and CDCR"

24  regarding the parties' rights and avoid future litigation.  (ECF No. 82 at 11.)  But that clarity

25  serves little purpose when damages have already accrued.  "Where a plaintiff seeks damages or

26  relief for an alleged constitutional injury that has already occurred[,] declaratory relief generally

27  is inappropriate."  Fitzpatrick v. Gates, 2001 WL 630534, at *5 (C.D. Cal. Apr. 18, 2001); see

28  also Societe de Conditionnement en Aluminium v. Hunter Eng'g Co., 655 F.2d 938, 943 (9th Cir.

1     1981) (an action for declaratory judgment "brings to the present a litigable controversy, which

2     otherwise might only b[e] tried in the future").  Here, plaintiff's alleged injury has already

3     occurred, and his claims for compensatory and punitive damages necessarily entail a

4     determination of whether defendants' past conduct violated his rights.  Therefore, the undersigned

5     agrees that plaintiff's request for declaratory relief is subsumed by his damages claims and should

6     be denied.  See Rhodes, 408 F.3d at 565-66 n.8.

7           **C. Punitive Damages**

8         Finally, defendants argue that plaintiff cannot prove they had the requisite mental state to

9     justify punitive damages.  (ECF No. 51-1 at 27.)  "[P]unitive damages may be recovered in

10    appropriate circumstances under § 1983."  Jackson v. Barnes, 749 F.3d 755, 762 (9th Cir. 2014).

11    Such circumstances include "when the defendant's conduct is shown to be motivated by evil

12    motive or intent, or when it involves reckless or callous indifference" to the plaintiff's

13    rights.  Smith v. Wade, 461 U.S. 30, 56 (1983); see also Dang v. Cross, 422 F.3d 800, 807–09

14    (9th Cir. 2005) (holding "oppressive conduct is a proper predicate for punitive damages under §

15    1983").  Under California law, the trier of fact can award punitive damages upon a finding of

16    "clear and convincing evidence" of "oppression, fraud, or malice."  Cal. Civ. Code § 3294(a).

17        Because plaintiff's Eighth Amendment excessive force and state law battery claims

18    against defendant Heslop will survive this motion, the undersigned declines to address the

19    availability of punitive damages for those claims.  See Arias v. Amador, 61 F. Supp. 3d 960, 979

20    (E.D. Cal. 2014) (holding the parties' differing versions of use of force incident warrant a jury's

21    resolution of punitive damages); Johnson v. Cnty. of San Bernardino, No. EDCV 18-2523 GW

22    AFM X, 2020 WL 5224350, at *30 (C.D. Cal. June 24, 2020) ("[The Court is not inclined to take

23    the question of punitive damages out of the factfinder's hands where there are still viable claims

24    for…excessive force[.]").  Accordingly, defendants request for summary adjudication of punitive

25    damages as to those claims is denied.  For the reasons described above, plaintiff's request for

26    punitive damages as to his First Amendment retaliation, Fourteenth Amendment equal protection,

27    state law assault, and Bane Act claims are moot.

28    /////

1

**CONCLUSION**

2          IT IS HEREBY RECOMMENDED that defendants' motion for partial summary

3   judgment be granted in part and denied in part as described above.

4          These findings and recommendations are submitted to the United States District Judge

5   assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one days

6   after being served with these findings and recommendations, any party may file written

7   objections with the court and serve a copy on all parties.  Such a document should be captioned

8   "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the

9   objections shall be served and filed within fourteen days after service of the objections.  The

10  parties are advised that failure to file objections within the specified time may waive the right to

11  appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

12  DATED: April 23, 2025

13

14

15                                          SEAN C. RIORDAN
                                            UNITED STATES MAGISTRATE JUDGE
16

17

18

19

20

21

22

23

24

25

26

27

28